UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SOUTHERN PAIN AND ANESTHESIA CONSULTANTS, LLC ET AL | CIVIL ACTION |
| VERSUS | NO:08-827 MDLA |
| RF MEDICAL DEVICES INC., ET AL | SECTION: "J" (4) |

**ORDER AND REASONS**

Before the Court is Defendants NeuroTherm Inc. and General Star Indemnity's (hereafter "Neurotherm Defendants") **Motion to Dismiss** (Rec. D. 4), Defendant Tyco Healthcare Group LP, Radionics Inc., Valleylab Inc. And Noetic Specialty Insurance Company's (hereafter "Noetic Defendants") **Motion to Dismiss** (Rec. D. 6), and Plaintiffs' **Motion to Dismiss Counterclaim** (Rec. D. 21).

**PROCEDURAL AND FACTUAL BACKGROUND**

This case arises out of a State Court medical malpractice suit filed in 2004 by Ms. Tony Peavy against Dr. Hubbell, one of the Plaintiffs in this case. As a result of an operation, Ms. Peavy became paralyzed and sued Plaintiff Dr. Hubbell along with

the Defendants in this case. All of the parties in the present lawsuit with the exception of Southern Pain & Anesthesia Consultants LLC (SP&A) were involved with the State Court lawsuit at one time or another.

After several years, all the defendants settled with Ms. Peavy and the State Court suit was dismissed.

Dr. Hubbell contends that over the course of discovery relating to the medical malpractice suit, he became aware of some alleged misrepresentations by Defendants regarding the efficacy of their product (the "discTRODE") on or around December 6, 2007. The present lawsuit was filed in federal court on December 19, 2008.

TYCO Healthcare Group LP (hereafter "Tyco") filed a counter claim on April 28, 2009 alleging that it was entitled to recover against Dr. Hubbell for passive indemnity.

The Defendants filed two motions to dismiss in this case in March of 2009. Plaintiffs filed a Motion to Dismiss Counterclaims in July of 2009. In February of 2010, this case was transferred to the undersigned Judge and these Motions to Dismiss were converted into Motions for Summary Judgment. (Rec. D. 38).

**DEFENDANTS' MOTION TO DISMISS (Rec. D. 4 & 6)**
**PARTIES ARGUMENTS:**

In Neurotherm Defendants' Motion to Dismiss or Alternatively

Motion for Summary Judgment, the Defendants make several arguments to support their motion: (1) Dr. Hubbell was judicially determined to be at fault in the *Peavy* case and therefore is barred from claiming tort indemnity; (2) SP&A was not a defendant in the *Peavy* case and therefore cannot be held liable for the damages emerging from the Peavy Case; (3) Plaintiffs' tort case has prescribed; (4) Plaintiffs do not plead any cognizable claims; (5) Plaintiffs' have no legal basis for attorney's fees, and (6) Plaintiffs' are barred by Res Judicata.

In their Motion to Dismiss, the Noetic Defendants reiterate several of the arguments raised in Motion to Dismiss (Rec. D. 6). These Defendants claim that Dr. Hubbell admitted that the subject of this litigation, the "discTRODE" did not malfunction, was not defective, and did not cause any injury to Ms. Peavy.[1] With respect to Defendants' Motions, the Court finds that they can be resolved on prescription grounds and the Court need not address the other arguments.

**DISCUSSION:**

In Louisiana, "[p]rescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a

---

[1] The two motions appear to be essentially identical with minor cosmetic changes made to the individual motions which cite almost exactly the same case law and raise identical arguments against Plaintiffs. Hereafter, Defendants, unless otherwise specified, will refer to all Defendants collectively.

reasonable person that he or she is the victim of a tort." <u>Beach v. Continental Cas. Co.</u>, 11 So.3d 715, 718 (La. App. 3 Cir. 6/3/09), *quoting* <u>Campo v. Correa</u>,828 So.2d 502, 510 (La.6/21/02)

> Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription.

<u>Campo</u> at 510. Further, "the prescriptive period commences when enough notice to call for an inquiry of a claim exists, not when an inquiry reveals the facts or evidence to sufficiently prove the claim. See <u>Babineaux v. State, Dept. of Transp. and *Dev.*,</u>, 927 So.2d 1121, 1125 (La. App. 1 Cir. 12/22/05).

"[D]amage is considered to have been sustained only when it has manifested itself with sufficient certainty to support accrual of a cause of action; *prescription will not being to run at the earliest possible indication that a plaintiff may have suffered some wrong*." <u>Cameron Parish Sch. Bd. v. Acands, Inc.</u>, 687 So.2d 84, 88 (La. 1997) (emphasis added). <u>See also</u>, <u>Bell v. Glaser</u>,2009 WL 1886709 (La. App. 3 Cir. 7/1/09);("Damage is sustained for the purposes of prescription when it has manifested itself with sufficient certainty to support the accrual of a

cause of action").

In this case, Plaintiffs became aware of the alleged tort not later than on December 6 2007, yet the lawsuit was filed suit on December 19, 2008. Therefore, Plaintiffs filed this lawsuit after the prescriptive period had run.

Furthermore, Ms. Peavy's suit did not interrupt prescription as to claims by Dr. Hubbell. In order "to interrupt prescription the first suit must not only be based upon the same factual occurrence ... the subsequent claimant must also be closely connected in relationship and identity of interest with the original plaintiff." Allstate Ins. Co. v. Theriot, 376 So. 2d 950, 954 (La. 1979). Dr. Hubbell and Ms Peavy are not "closely connected in ...identity of interest." Id. Rather, Ms. Peavy was a plaintiff in a suit against Dr. Hubbell and their interests were adverse to each other for the duration of her lawsuit. Therefore, Ms. Peavy's suit did not interrupt the prescription of Dr. Hubbell's claims.

Even when parties do share the same interest, "[t]he filing by one party of a suit to recover his damages usually does not affect the running of prescription against other parties who sustained separate damages in the same accident."Louviere v. Shell Oil Co., 440 So. 2d 93, 95 (La. 1983). Here the damages sustained by Ms. Peavy as a result of the accident were not the same as claimed by Dr. Hubbell. Dr. Hubbell's damages arise out

of the litigation which came from the accident.

The Court finds that there is not sufficient connection between Ms. Peavy's suit and Dr. Hubbell's suit to interrupt prescription. Therefore, prescription had already run by the time Dr. Hubbell and SP&A filed the above cited mater.

### Plaintiffs' Motion to Dismiss (Rec. D. 21)

Plaintiffs also filed a motion to Dismiss the counter-claims brought by Defendant TYCO. Plaintiffs argue that the TYCO Defendant has failed to state a claim for indemnity against Plaintiffs since TYCO settled its case with Ms. Peavy without any reservation of rights against Dr. Hubbell.

TYCO asserts that they are entitled to implied indemnity from Plaintiffs.

"A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person."La. C.C. Art. 2324. Therefore, any fault that TYCO accepted in its settlement with Ms. Peavy is its alone.

Accordingly,

**IT IS ORDERED** that Neurotherm Defendants' **Motion to Dismiss** (Rec. D. 4) and  Noetic Defendants' **Motion to Dismiss** (Rec. D. 6) are **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' **Motion to Dismiss**

**Counterclaim** (Rec. D. 21) is **GRANTED**.

New Orleans, Louisiana, this the 17th day of June 2010.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE